# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA
# THIRD DIVISION

----------------------------------------------------------------

| | |
|---|---|
| In Re: | Bankruptcy 02-93495 |
| | Chapter 7 Case |
| Tamara M. Hansel, | Adversary |
|   fka Tamara M. Markey | |
|     Debtor, | |
| | |
| Randall L. Seaver, Trustee | |
| and Tamara M. Hansel, | |
| | **COMPLAINT** |
|   Plaintiffs, | |
| | |
| vs. | |
| | |
| David F. Frundt and | |
| Frundt & Johnson, Ltd., | |
| | |
|   Defendants. | |

----------------------------------------------------------------

     Now come forth the Plaintiffs and for their causes of action against Defendants, state and allege as follows:

1.     That Plaintiff Randall L. Seaver is the duly appointed, qualified and acting Trustee (the "Trustee") of the bankruptcy estate of Tamara M. Hansel, formerly known as Tamara M. Markey (hereinafter referred to as either "Debtor" or "Hansel").

2.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 541 and 542. This is a core proceeding.

3.     That the Debtor filed a petition under Chapter 7 of Title 11 of the United States Code on November 6, 2002 and the case is now pending in this court.

4. That Defendant David F. Frundt ("Frundt") is an attorney at law licensed to practice in the State of Minnesota and has a business address of 23 Main Street South, Winnebago, MN 56098 and 117 W. 5th Street, Blue Earth, MN 56013.

5. That Frundt & Johnson, Ltd. is a duly organized and existing Minnesota corporation with its offices located at 117 W. 5th Street, Blue Earth, MN 56013.

6. That at all times material herein, Defendant Frundt was acting in the course and scope of either his employment by or as an agent of Frundt & Johnson, Ltd. (hereinafter referred to as "F&J").

7. That commencing on or about August 28, 2002, Hansel began consultations with Frundt regarding the possibility of filing bankruptcy.

8. That Hansel provided various information to Frundt concerning her debts, assets and financial affairs. Plaintiff Hansel provided numerous documents and information to Frundt including a copy of her divorce decree and advised Frundt that she was involved in litigation with Wells Fargo to determine whether the mortgage on Hansel's Homestead held by Wells Fargo was valid or invalid. To the best of Plaintiff Hansel's recollection and belief, she provided to Frundt all information requested by Frundt to determine if filing a bankruptcy case was in her best interest. Plaintiff Hansel not being knowledgeable about legal and bankruptcy matters relied upon Frundt to request such information and or documents to determine if filing a bankruptcy case was in her best interest.

9. That Hansel advised Frundt that she had recently been divorced from her former husband, was being sued and was desirous of determining whether filing a bankruptcy petition would be beneficial to Hansel.

10. That Frundt represented to Hansel that he was qualified to advise her on bankruptcy matters.

11. Plaintiff Hansel relied upon Frundt to review and analyze the information which she delivered to Frundt to determine whether filing a bankruptcy petition would be of benefit to her and to advise her concerning the exemptions and how to protect as much of her assets as possible from the claims of her creditors and the bankruptcy trustee and bankruptcy estate. Frundt represented to Hansel that he was capable of performing such analysis and rendering such advice.

12. That Frundt charged Hansel a fee of $800.00 for legal services plus $214.00 for filing fees, traveling fees and telephone expenses for total charges of $1,114.67.

13. That Plaintiff Hansel was completely truthful, honest and forthcoming in providing information to Frundt and responding to all of Frundt's requests for information and inquiries regarding her financial circumstances.

14. That Plaintiff Hansel is without any experience or training in the law and provided all information to Frundt which Frundt requested from her. Plaintiff Hansel relied upon Frundt to prepare her bankruptcy petition, schedules and statement of financial affairs in accordance with the requirements of the bankruptcy law and rules and Frundt impliedly represented to Plaintiff Hansel that he was capable of preparing a bankruptcy petition, schedules and statement of financial affairs in accordance with the bankruptcy law and applicable rules.

15. That on November 6, 2002, a voluntary Chapter 7 bankruptcy petition was filed on Plaintiff Hansel's behalf by Defendant Frundt and the Bankruptcy Court assigned File No. 02-93495 to the bankruptcy petition.

16. That in accordance with the applicable bankruptcy law, the United States Trustee, an agency of the United States Department of Justice, appointed Plaintiff Seaver as the Chapter 7 Bankruptcy Trustee of the bankruptcy estate of Hansel.

17. Upon the filing of the bankruptcy petition and in accordance with 11 U.S.C. § 541, a bankruptcy estate is created which consists of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

18. That on Schedule A of the bankruptcy petition (hereinafter referred to as "Schedule A"), Frundt listed three pieces of real estate owned by Hansel in Martin County, Minnesota, one of which she occupied as her homestead (the "Homestead"). For the property occupied by Hansel as her Homestead, Frundt listed the value of the property as zero and the amount of the secured claim against the property as zero. The Homestead actually had a value of not less than $75,000.00 and was encumbered by three mortgages, one of which is the Wells Fargo mortgage referred to above and two other mortgages in favor of Conseco Finance totaling, according to Schedule B, approximately $66,000.00.

19. On Schedule C, Property Claimed as Exempt, Frundt prepared said Schedule C and claimed zero for the Homestead occupied by Hansel and took a $15,000.00 exemption for a property not occupied by Hansel but subject to a $24,510.82 attorney's lien in favor of Wollschlager, Tow and Welder, P.A. ("Wollschlager")

20. That on the Statement of Financial Affairs prepared by Frundt, Frundt did not disclose that Hansel was in litigation with Wells Fargo concerning the validity of a mortgage against her Homestead, which should have been disclosed at Item 4a, Statement of Financial Affairs ("SOFA").

21. That on the SOFA prepared by Defendant Frundt, Frundt did not disclose that Hansel was involved in divorce proceedings which resulted in a decree of dissolution of marriage entered on or about February 8, 2002, which should have been disclosed at Item 4a of SOFA.

22. That Hansel's Divorce Decree, a copy of which Hansel delivered to Defendant Frundt prior to the bankruptcy petition being filed, listed various items of personal property awarded to Hansel at paragraph 9a on page 23 of the Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree (hereinafter referred to as the "Divorce Decree") including, but not limited to Lorenz 8-foot snow blower, 10-foot bumper hitch tandem horse trailer, Indian moped, satellite dish and receiver and an Amana chest freezer. Frundt failed to schedule these assets on Schedule B and Frundt failed to advise Hansel that said assets would constitute property of the bankruptcy estate which would have to be turned over, surrendered and delivered to the bankruptcy trustee.

23. On or about November 11, 2002, the Trustee sent a letter to Frundt requesting Frundt produce to the Trustee a copy of the Divorce Decree and also to amend Schedules A and C to assign a value to the Homestead. On or about November 14, 2002, Frundt responded to the Trustee with a copy of the Divorce Decree, advised the Trustee that the value of the Homestead was $28,900.00 and stated:

> I will be filing an amendment with the correct amount very soon to correct this error.

24. That on or about December 13, 2002, Frundt received a letter from Joel Welder, the attorney at law representing Hansel in the Wells Fargo litigation, that the District Court had ruled in favor of Hansel and providing Frundt with a copy of the Findings of Fact,

Conclusions of Law and Order for Judgment and attorney Joel Welder asked Frundt if Frundt should provide a copy of the Findings of Fact, Conclusions of Law and Order for Judgment to the Bankruptcy Court. That by reason of this decision of the Martin County District Court, Plaintiff Hansel's Homestead had value in excess of the liens against the Homestead. Defendants should have amended Schedules A and C to exempt Hansel's equity in her Homestead. Defendants did not amend Schedules A and C to protect Hansel's equity in her Homestead.

25. On or about January 14, 2003, the Trustee wrote to Frundt requesting that Frundt execute a stipulation to extend the time that the Trustee had to object to Hansel's claim to exemptions. That on or about January 14, 2003, Frundt executed the stipulation and on or about January 21, 2003, the Court entered an order extending the time that the Trustee had to object to exemptions until March 10, 2003.

26. That on or about February 4, 2003, Hansel sent to Frundt an appraisal performed by Allen D. Kahler of Land Services Unlimited, Inc. dated January 17, 2003, which appraised the value of Hansel's Homestead at $75,000.00. In addition, with the letter of February 4, 2003, Hansel sent Frundt a copy of her 2001 and 2002 state and federal income tax returns. That Frundt did not send copies of the 2001 and 2003 state and federal tax returns to the Trustee.

27. That on or about February 19, 2003, the Bankruptcy Court issued a Discharge to Hansel.

28. That on or about February 26, 2003, Frundt sent Hansel a letter enclosing the Discharge and stating:

> This notice effectively brings your bankruptcy proceeding to a ***close*** and you are officially discharged of all credit card debt listed in your bankruptcy petition as a result of this Notice. Also, this Notice allows

creditors to again speak with you and you are required to pay the debts which you have reaffirmed during the bankruptcy proceeding.

Thank you for choosing the law firm of Frundt & Johnson, Ltd. to be of service to you. I enjoyed helping you with this matter and look forward to helping you with any other legal needs that you may have in the future. (Emphasis added)

29. That in the February 26, 2003 letter, Frundt did not notify Hansel that the Trustee still had until March 10, 2003 to object to Hansel's claim of exemptions, that Frundt had not amended Schedules A and C to protect Hansel's equity in her Homestead and that Hansel was obligated to account to the Bankruptcy Trustee for amounts received from Hansel's 2001 and 2002 state and federal tax refunds.

30. That on or about March 10, 2003, the Trustee objected to Hansel's claim of exemption to her Homestead stating, "Objection is made to ensure that the claimed exemption of '0.00' entitles the Debtor to nothing."

31. On or about March 20, 2003, Frundt wrote to Hansel advising her of the Objection to Claimed Exempt Property and stated:

I have reviewed this document and, in my opinion, there is no need to take any action and reply to this motion…Again, it is my recommendation that we take no action at this time.

32. In reliance upon the advice of Frundt, Hansel did not respond to the Trustee's objection to the claim of exemption to her Homestead.

33. On April 9, 2003, the Court entered an order sustaining the Trustee's objection to the exemption claimed in her Homestead and ruling:

The Debtor's claimed exemption of a homestead located in Martin County, Minnesota, as described at Exhibit A hereto, under 11 U.S.C. § 522(d)(1) in the amount of "0.00" entitles her to nothing.

34. On May 15, 2003, Frundt wrote to Hansel returning certain documents Hansel had delivered to Frundt. Frundt did not advise Hansel that her Homestead was no longer exempt.

35. Sometime during June 2003, the exact date being unknown to Hansel, she contacted Fundt to inquire whether she could use her 2002 tax refund to purchase a car. On June 26, 2003, Frundt advised Hansel:

> I have completed my review of your file to determine whether or not you can use your 2002 tax refund to purchase a new vehicle at this time. Although we did not claim your tax refund as an exempt asset, I believe that you have plenty of room under the exemptions to do so if the need should arise. Therefore, it is okay to use the refund to purchase a new vehicle at this point in time.
>
> Thank you for your patience in waiting for this answer. If you have any other questions or concerns, please feel free to contact me.

36. Frundt did not advise Hansel that any portion of her 2002 tax refund not used to purchase a car and that all of her 2001 tax refund should be paid to the Bankruptcy Trustee. In reliance upon the advice and lack of advice from Frundt since providing Frundt with copies of her 2001 and 2002 tax returns on February 4, 2003, Hansel spent her 2001 and 2002 state and federal tax refunds.

37. That sometime between April 1, 2004 and May 17, 2004, Hansel sought the advice and counsel of Frundt if it was permissible for her to refinance her Homestead. Frundt advised Hansel that she could refinance her Homestead and on or about May 12, 2004, Hansel refinanced her Homestead, paying $50,000.00 to the Wollschlager Law Firm, the law firm which represented her in her divorce proceedings and the Wells Fargo litigation and Hansel received approximately $41,635.53 in cash. That

but for the advice Hansel received from Frundt that she could refinance her Homestead, Hansel would not have refinanced her Homestead.

38. That commencing in June 2004 and lasting through 2007, the Trustee has either commenced discovery or litigation against Hansel, in addition to the objection to the Debtor's Homestead, which has resulted in

   a. The Debtor's Discharge in Bankruptcy has been revoked;

   b. The Debtor lost all claim of exemption in her Homestead and an asset with a value of approximately $100,000.00 as of May 2004;

   c. The Trustee has a judgment against Debtor in the amount of $51,470.12;

   d. The Debtor was ordered to surrender to the Trustee a ten-foot bumper hitch tandem horse trailer, an Indian moped, a satellite dish and receiver, an Amana chest freezer, 10 large Wenco steel vinyl windows and six small Wenco sheet vinyl windows.

39. That at the time of her Homestead refinance in May of 2004, the Hansel believed she was indebted to the Wollschlager Law Firm for approximately $70,000.00, which was compromised to $50,000.00. Because of an adversary proceeding alleging an unauthorized post-petition transfer commenced by the Trustee against the Wollschlager Law Firm, Hansel is now indebted to the Wollschlager Law Firm for $23,875.47.

40. That because her Bankruptcy Discharge has been revoked, Hansel is liable to all the creditors which existed upon the filing of her bankruptcy case, approximately $202,795.00 in addition to the amounts previously set forth herein.

41. That Hansel has incurred liability for legal fees in defending the actions commenced by the Trustee in the amount of $22,400.

9

## FIRST CAUSE OF ACTION

## LEGAL MALPRACTICE - NEGLIGENCE

42. Plaintiffs reallege the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

43. That at all times material herein, there was an attorney-client relationship between Hansel and Defendants for the purpose of rendering legal advice and that the Defendants were paid money for their services.

44. That at the time Plaintiff Hansel retained Defendants, she did not possess any expertise in legal matters and relied upon Defendants to competently represent her legal interests in good faith and with undivided loyalty in their paid fiduciary capacity.

45. That Plaintiff Hansel relied upon Frundt's expressed and implied representations and innocently trusted his legal advice.

46. That Plaintiff Hansel relied upon Frundt to thoroughly investigate the facts and to protect her rights in accordance with her wishes and within the law.

47. That by undertaking the role as an attorney, Defendants had a duty to represent Plaintiff Hansel's legal interests thoroughly and competently, taking whatever steps necessary as competent lawyers to investigate, analyze and fully determine Plaintiff Hansel's legal rights and entitlement.

48. That Defendants breached their duty of care, including, but not limited to, the following aspects:

    a. Failure to value the Homestead and to claim the Homestead exempt with a specific dollar amount on Schedules A & C;

b. Failure to list the personal property awarded to Plaintiff in her Divorce Decree on Schedule B;

c. Failure to list the pending litigation between Plaintiff Hansel and Wells Fargoon the SOFA;

d. Failure to amend the bankruptcy petition and schedules to reflect the appraisal provided by Hansel to Defendants, to place a value upon the Homestead exemption and to amend Schedule C to protect Plaintiff Hansel's Homestead;

e. Failure to advise Hansel upon receipt of her 2001 and 2002 state and federal income tax refunds that she had a duty to pay the tax refunds, or so much thereof as Plaintiff Hansel could not exempt, to the Bankruptcy Trustee;

f. Advising Plaintiff Hansel that she could spend her 2002 state and federal tax refunds;

g. Failure to respond to Plaintiff's motion objecting to Plaintiff Hansel's Homestead exemption;

h. Failure to advise Hansel that she could not refinance her Homestead;

49. That as a direct and proximate result of Defendants' breaches of the standard of care, the Plaintiff has sustained legal damages and may sustain legal damages in the future, including, but not limited to:

a. But-for the negligent acts of Defendants, Plaintiff Hansel would have had a Homestead exempt with a $100,000.00 value;

b. But-for the negligent acts of the Defendants, Plaintiff Hansel would not have had her Discharge revoked and be responsible for over $202,000.00 of debts;

11

c. But-for the negligent acts of Defendants, Plaintiff Hansel would not have a judgment against her and in favor of the Trustee in the amount of $51,470.12

d. But-for the negligent acts of Defendants, Plaintiff Hansel would not have sustained direct and consequential monetary damages in excess of $50,000.00;

e. But-for the negligent acts of Defendants, Plaintiff Hansel would not have liability for legal fees in the amount of $22,400 in defending against the actions commenced by the Trustee.

50. That by reason of the operation of 11 U.S.C. § 541, the claims of Hansel against Frundt or a portion thereof are property of the bankruptcy estate represented by Plaintiff Trustee.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

51. Plaintiffs reallege the allegations contained in paragraphs 1 through 48 as though fully set forth herein.

52. That not later than November 6, 2002, Plaintiff Hansel entered into a contract with Defendants. Pursuant to this contract, Defendants promised to provide competent and adequate legal assistance to Plaintiff Hansel, and in exchange, Plaintiff Hansel would pay Defendants attorney's fees.

53. That Defendants breached this contract with Plaintiff Hansel including, but not limited to, the following respects:

a. Failure to value the Homestead and to claim the Homestead exempt with a specific dollar amount on Schedules A & C;

b. Failure to list the personal property awarded to Plaintiff in her Divorce Decree on Schedule B;

c. Failure to list the pending litigation between Plaintiff Hansel and Wells Fargo on the SOFA;

d. Failure to amend the bankruptcy petition and schedules to reflect the appraisal provided by Hansel to Defendants, to place a value upon the Homestead exemption and to amend Schedule C to protect Plaintiff Hansel's Homestead;

e. Failure to advise Hansel upon receipt of her 2001 and 2002 state and federal income tax refunds that she had a duty to pay the tax refunds, or so much thereof as Plaintiff Hansel could not exempt, to the Bankruptcy Trustee;

f. Advising Plaintiff Hansel that she could spend her 2002 state and federal tax refunds;

g. Failure to respond to Plaintiff's motion objecting to Plaintiff Hansel's Homestead exemption;

h. Failure to advise Hansel that she could not refinance her Homestead;

54. That as a direct and proximate result of Defendants' breach of contract, Plaintiffs have sustained legal damages including, but not limited to:

a. But-for the negligent acts of Defendants, Plaintiff Hansel would have had a Homestead exempt with a $100,000.00 value;

b. But-for the negligent acts of the Defendants, Plaintiff Hansel would not have had her Discharge revoked and be responsible for over $202,000.00 of debts;

c. But-for the negligent acts of Defendants, Plaintiff Hansel would not have a judgment against her and in favor of the Trustee in the amount of $51,470.12

d. But-for the negligent acts of Defendants, Plaintiff Hansel would not have sustained direct and consequential monetary damages in excess of $50,000.00;

13

e. But-for the negligent acts of Defendants, Plaintiff Hansel would not have liability for legal fees in the amount of $22,400 in defending against the actions commenced by the Trustee.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

55. Plaintiffs reallege the allegations contained in paragraphs 1 through 54 as though fully set forth herein.

56. That Defendants made the following affirmative representations, and/or representations by silence:

   a. Representations by affirmative statements that the Plaintiff's Homestead was exempt and that no action was required to be taken by Plaintiff Hansel;

   b. Representations by silence as to Plaintiff Hansel's obligations to the Bankruptcy Trustee for payment of funds representing her 2001 and 2002 state and federal income tax refunds;

   c. Representations that Plaintiff Hansel's rights were being protected; and

   d. Implied representations concerning Defendants' competency and experience.

57. That the above representations by Defendants were false or made with a reckless disregard as to their truth or falsity.

58. That the above representations by Defendants dealt with past or present facts.

59. That the above representations by Defendants were material facts.

60. That the above representations made by Defendants were susceptible of knowledge, and in fact, some were known to the Defendants at the time the statements were made.

61. That the above representations made by Defendants were made with an intent to have Plaintiff Hansel rely upon the representation, or were made positively without qualification, in conscious ignorance of the truth, and with such heedless and reckless disregard of their consequence, as it had the effect of deliberate intention.

62. That the above representations by the Defendants induced Plaintiff Hansel to act and rely upon the representations to her detriment.

63. That the above representations caused Plaintiffs to suffer damages in excess of $50,000.00.

## FOURTH CASUE OF ACTION

## RECKLESS MISREPRESENTATION

64. Plaintiffs reallege the allegations contained in paragraphs 1 through 63 as though fully set forth herein.

65. That the Defendants made the following reckless representations:

   a. Representations by affirmative statements that the Plaintiff's Homestead was exempt and that no action was required to be taken by Plaintiff Hansel;

   b. Representations by silence as to Plaintiff Hansel's obligations to the Bankruptcy Trustee for payment of funds representing her 2001 and 2002 state and federal income tax refunds;

   c. Representations that Plaintiff Hansel's rights were being protected; and

   d. Implied representations concerning Defendants' competency and experience.

66. That the above representations made by the Defendants were asserted as facts without knowledge of whether they were true or false.

67. That the above representations by the Defendants were facts susceptible of knowledge, and in fact were known by Defendants at the time the statements were made.

68. That the above representations made by the Defendants were made with an intent to have Plaintiffs rely upon the representation, or made positively without qualification, in conscious ignorance of the truth and with such heedless and reckless disregard for their accuracy or inaccuracy of the information.

69. That the above representations by the Defendants induced Plaintiff Hansel to act or rely to her detriment.

70. That the above representations proximately caused the Plaintiffs to suffer damages, including those resulting from emotional distress in an amount in excess of $50,000.00.

## FIFTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

71. Plaintiffs reallege the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

72. That Plaintiff Hansel contracted with Defendants to represent her as paid fiduciaries and, as such, had a duty to represent Plaintiff Hansel in good faith and with undivided loyalty in her best legal interest.

73. The Defendants, as paid fiduciaries, had a duty to disclose any material matter which pertained to the representation of Plaintiff Hansel.

74. That the Defendants breached their fiduciary obligations to Plaintiff Hansel as set forth more particularly in the preceding counts of this Complaint.

75. That as a direct and proximate result of the above-mentioned breaches of fiduciary obligations, Plaintiff has suffered damages in an amount in excess of $50,000.00.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, and each of them, jointly and severely, for general and special damages in an amount in excess of Fifty Thousand and No/100s ($50,000.00) Dollars, or, in the amount, the amount proved at trial, together with a rescission of attorney's fess, costs, disbursements and interest.

Dated: November 4, 2008

                                    __/e/ Michael J. Iannacone___
                                    Michael J. Iannacone, #48719
                                    Attorney for the Trustee
                                    8687 Eagle Point Blvd.
                                    Lake Elmo, MN 55042
                                    (651) 224-3361
                                    (651) 297-6187 Fax

**Acknowledgment required by Minn. Stat. § 549.211**

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211, against the attorney, law firm or any party that has violated or is responsible for a violation of Minn. Stat. § 549.211, Subd. 2.

Dated: November 4, 2008

                                    __/e/ Michael J. Iannacone___
                                    Michael J. Iannacone, #48719