## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

CHAPTER 7

In re:

BKY CASE NO.:  02-93495

Tamara M. Hansel,
fka Tamara M. Markey,

Debtor.

ADV. NO.:  08-3177

Randall L. Seaver, Trustee and
Tamara M. Hansel,
fka Tamara M. Markey,

Plaintiffs,

v.

David F. Frundt and
Frundt & Johnson, Ltd.,

Defendants.

**DEFENDANTS DAVID F. FRUNDT
AND FRUNDT & JOHNSON,
LTD.'S NOTICE OF HEARING
AND MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P.
12(b)(6), MOTION TO DISMISS
UNDER MINN. STAT. § 544.42,
AND MOTION FOR
DISQUALIFICATION UNDER
MINN. R. PROF. CONDUCT 3.7**

1.     Defendants David F. Frundt and Frundt & Johnson, Ltd., move the Court for the relief requested below and give notice of hearing.

2.     The Court will hold a hearing on this motion at 1:30 p.m. on April 6, 2010, before the Honorable Gregory F. Kishel in Courtroom 2A, U.S. Courthouse, 316 North Robert Street, Saint Paul, Minnesota 55101.

3.     Any response to this Motion must be filed and served by delivery no later than April 1, 2010, which is three (3) days before the above date (excluding Saturdays,

Sundays and holidays), or be filed and served by mail not later than March 26, 2010, which is seven (7) days before the date set for the hearing (excluding Saturdays, Sundays and holidays) in accordance with Local Rules. UNLESS A RESPONSE IS TIMELY SERVED AND FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. The Court has "related to" subject matter jurisdiction over this motion pursuant to 28 U.S.C. § 157(c)(1).

5. Defendants respectfully ask the Court to dismiss this case under Fed. R. Civ. P. 12(b)(6) due to Plaintiff Hansel's *in pari delicto* status. In the alternative, Defendants request that this case be dismissed under Minn. Stat. § 544.42. In the other alternative, Defendants respectfully request that attorney Iannacone be disqualified under Minn. R. Prof. Conduct 3.7.

WHEREFORE, Defendants request that the Court enter an Order:

a. Dismissing this case pursuant to Fed. R. Civ. P. 12(b)(6) due to Plaintiff Hansel's *in pari delicto* status; or

b. In the alternative, dismiss this case pursuant to Minn. Stat. § 544.42; or

c.     In the alternative, disqualify attorney Iannacone from this case.

Respectfully submitted,

BURKE & THOMAS, PLLP

Dated:  02/26/10         By /e/Richard J. Thomas
                                    Richard J. Thomas (#137327)
                                    Corinne Ivanca (#0386774)
                     3900 Northwoods Drive Suite 200
                     St. Paul, MN 55112
                     Telephone:  651-490-1808
                     Facsimile:  651-490-1872
                     thomas@burkeandthomas.com

**ATTORNEYS FOR DEFENDANTS**

| | |
|---|---|
| In re:<br><br>Tamara M. Hansel,<br>fka Tamara M. Markey,<br><br>              Debtor. | CHAPTER 7<br><br>BKY CASE NO.: 02-93495 |
| Randall L. Seaver, Trustee and<br>Tamara M. Hansel,<br>fka Tamara M. Markey,<br><br>              Plaintiffs,<br><br>  v.<br><br>David F. Frundt and<br>Frundt & Johnson, Ltd.,<br><br>              Defendants. | ADV. NO.: 08-3177<br><br>**DEFENDANTS DAVID F. FRUNDT AND FRUNDT & JOHNSON, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), MOTION TO DISMISS UNDER MINN. STAT. § 544.42, AND MOTION FOR DISQUALIFICATION UNDER MINN. R. PROF. CONDUCT 3.7** |

## INTRODUCTION

This is an action for legal malpractice on behalf of the Plaintiffs, a bankruptcy debtor and the bankruptcy Trustee, arising out of Defendants' allegedly negligent representation of the debtor in the bankruptcy action.

The doctrine of *in pari delicto* provides a complete defense to Plaintiffs' claims. *In pari delicto* operates to prevent recovery where a plaintiff has engaged in fraud. The damages alleged in the Amended Complaint arise out of this Court's October 27, 2007

ruling in case BKY 02-93495, adversary proceeding ADV 05-3269.  Although the basis for that adverse ruling was Plaintiff Hansel's bad faith and fraud, Plaintiff Hansel brings this action alleging the damages arising out of the bankruptcy ruling are the fault of Defendant Frundt.  Plaintiff Hansel is barred from maintaining an action against Defendants by the doctrine of *in pari delicto*, because this Court, in the bankruptcy and adversary proceedings, has already ruled that Plaintiff Hansel (1) acted fraudulently in disposing of her tax refunds which were property of the bankruptcy estate, and (2) acted fraudulently in mortgaging her house while it was the property of the bankruptcy estate. This Court further found that Plaintiff Hansel was not entitled to amend her claim of exemptions because she had acted in bad faith, and entered judgment against Plaintiff Hansel for the sum of $51,470.12 due to her post-petition conversion of bankruptcy estate property.  Therefore, Plaintiffs' claims must be dismissed for failure to state a claim under Fed. R. Civ. P., Rule 12(b)(6).

In the alternative, the Amended Complaint must be dismissed because Plaintiffs have failed to file a minimally acceptable expert affidavit pursuant to Minn. Stat. § 544.42.

In the other alternative, Plaintiffs' attorney Iannacone must be disqualified from this case.  He represented Plaintiff Hansel in the underlying adversary proceeding.  He is a necessary witness and his negligence is implicated in the present action.

## <u>DOCUMENTS COMPRISING THE RECORD</u>

1.      Amended Complaint filed November 5, 2008 in this proceeding.

2.     October 29, 2007 Memorandum Decision After Trial (ADV 05-3269), and Order on Trustee's Objection to Debtor's Amended Claim of Exemptions (BKY 02-93495).

3.     <u>Taunton v. Freeman</u>, No. C4-02-737, 2002 WL 31867706 (Minn. App. Dec. 24, 2002) (unpublished).

4.     Second Expert Affidavit dated May 5, 2008.

5.     <u>Bajwa v. Foster</u>, No. A06-1681, 2007 WL 2245801 (Minn. App. Aug. 7, 2007) (unpublished).

6.     <u>Banken v. Hoke</u>, No. A08-0160, 2009 WL 366279 (Minn. App. Feb. 17, 2009) (unpublished).

## **FACTS**

Plaintiff Hansel filed a Chapter 7 bankruptcy on November 6, 2002. (Amended Complaint at ¶ 3, attached as Exh. 1 to the Affidavit of Richard J. Thomas ("Thomas Aff.").) Frundt represented Hansel in the filing of her November 6, 2002 bankruptcy petition. (<u>Id.</u> at ¶ 15.) Defendant Frundt is employed by Frundt & Johnson, Ltd. (<u>Id.</u> at ¶ 5.)

Plaintiff Randall Seaver was appointed as the Trustee of the bankruptcy estate. (Amended Complaint at ¶ 16.) At the time the petition was filed, Hansel had recently finalized a divorce from her ex-husband, and Hansel was also in the midst of litigation with Wells Fargo to determine whether the mortgage on her home was valid. (<u>Id.</u> at ¶¶ 8-9, 21.) Hansel owed attorney's fees to the Wollschlager, Tow and Welder, P.A. law firm at this time. (<u>Id.</u> at ¶ 19.) On Schedule A of the bankruptcy petition, Frundt listed

Hansel's homestead property value as zero, and on Schedule C, Property Claimed as Exempt, Frundt claimed zero for the Homestead exemption. (Id. at ¶¶ 18-19.) At the time she filed, Hansel owned various items of personal property, including a snowblower attachment, a Indian-brand moped, an Amana-brand freezer, a satellite dish and receiver, a horse trailer, and a savings account at State Bank of Ceylon. (October 29, 2007 Memorandum Decision After Trial [ADV 05-3269], and Order on Trustee's Objection to Debtor's Amended Claim of Exemptions [BKY 02-93495] (hereinafter referred to as the "Underlying Order", attached as Exh. 2 to Thomas Aff.) at 4.) None of these items was disclosed in her bankruptcy petition. (Id.)

On November 11, 2002, the Trustee sent a letter to Frundt requesting a copy of Hansel's divorce decree and requesting that Frundt amend Schedules A and C to reflect the value of the homestead. (Amended Complaint at ¶ 23.) Frundt sent the divorce decree but did not amend the value of the homestead. (Id.) On December 13, 2002, Frundt received a letter from the attorney representing Hansel in the Wells Fargo litigation, enclosing the district court order ruling that the disputed mortgage on Hansel's homestead was void. (Amended Complaint at ¶ 24.)

On December 19, 2002, the Trustee convened the meeting of the creditors. (Underlying Order at 2.) At the meeting the Trustee instructed Hansel to file her 2001 and 2002 tax returns, to refrain from cashing the refund checks and to send the refund checks to Frundt. (Id.) Hansen agreed to this. (Id. at 3.)

In early 2003, Frundt stipulated to an extension of time until March 10, 2003 for the Trustee to object to Hansel's claim to exemptions. (Amended Complaint at ¶ 25.)

Hansel received a discharge on February 19, 2003. (Id.) On March 10, 2003, the Trustee objected to Hansel's claim of homestead exemption, requesting an adjudication that the homestead exemption was in fact zero. (Underlying Order at 3.) Frundt did not respond to the motion, and an order was entered that the claimed exemption of zero entitled Hansel to nothing. (Id.) In April of 2003, the court of appeals affirmed the district court's decision rendering the mortgage on Hansel's homestead void. Wells Fargo Home Mortgage, Inc. v. Chojnacki, 668 N.W.2d 1, 6 (Minn. App. 2003).

On June 26, 2003, in response to Hansel's request for advice regarding her 2002 tax refund, Frundt wrote to Hansel telling her that it was okay to purchase a car with the 2002 tax refund proceeds. (Amended Complaint at ¶ 35.) In May of 2004, Hansel granted a mortgage on her home and obtained a loan with net proceeds of $91,635.53. (Underlying Order at 4.) She then paid $50,000 to the Wollschlager law firm related to representation in her divorce and the Wells Fargo litigation. (Amended Complaint at ¶ 37.)

The Trustee filed an adversary proceeding against Hansel, seeking revocation of the grant of discharge on the basis that Debtor had knowingly and fraudulently failed to surrender property of the bankruptcy estate, including the proceeds of the mortgage-secured loan, tax refunds, proceeds from sale of the snowblower attachment, and various items of personal property. (Underlying Order at 4.) The Trustee also sought turnover of the subject assets or their value from Hansel. (Id. at 5.)

The Trustee also filed adversary proceeding ADV 05-3271 against First Franklin Financial Corporation and the Wollschlager law firm regarding the unauthorized

dissipation of the mortgage loan proceeds. (Underlying Order at 27.) The defendants in that proceeding eventually settled with the Trustee for a payment of $45,000. (Id.)

In defense of the adversary proceeding against her, Hansel engaged her present counsel, Michael Iannacone. (Underlying Order at 5.) As an affirmative defense, Hansel asserted that she had reasonably relied on the advice of her bankruptcy counsel, Defendant Frundt, in her dealings with the bankruptcy Trustee. (Id.) The Trustee filed a motion for summary judgment. (Id.) Five days prior to the rescheduled hearing, Iannacone filed amended schedules in the bankruptcy case, where Hansel then claimed an exemption for her homestead in the amount of $92,000. (Id.) One day before the hearing, Iannacone filed a response to the Trustee's motion. (Id.)

This Court ruled that Hansel's dissipation of estate property, including the proceeds from the tax refunds and mortgage disbursement and from the sale of the snowblower attachment, were failures to surrender estate property that were actionable under 11 U.S.C. § 727(d)(2). (Underlying Order at 5.) This Court further held that there were issues of material fact as to whether Hansel acted with knowledge or intent to dissipate the funds. (Id. at 5-6.) Those fact issues, and whether the amended claim of exemptions would be allowed and whether the discharge would be revoked, were reserved for trial. (Id. at 6.)

After trial on these issues, this Court found that notwithstanding the advice Hansen received from Defendant Frundt, Hansen knowingly and without disclosure to the Trustee violated her obligations as a debtor in bankruptcy and materially harmed the

interests of her creditors.  (Underlying Order at 7.)  Because of this, her discharge was revoked and her amended claim for exemptions was disallowed.  (Id.)

The standard for finding a debtor committed fraud in the dissipation of assets is that the debtor was aware of the wrongfulness or impropriety of the disposition, that the debtor deliberately failed to make disclosure to the Trustee, and that the debtor harbored a simple intent to go ahead with the disposition.  (Underlying Order at 9.)  These elements were satisfied with regard to the dissipation of the 2001 and 2002 tax refunds and the proceeds from the mortgage.  (Id. at 14 and 23.)  This Court specifically held that the facts did not support an "advice of counsel" defense with regard to the dissipation of the 2001 and 2002 tax year refunds and the post-petition mortgage proceeds.  (Id. at 12 and 22.)

As to the proceeds from the sale of the snowblower attachment and the personal property which was not disclosed in the schedules but was still held by Hansel, this Court found that Hansel did not act with fraudulent intent in not disclosing those assets to the Trustee, but this Court ordered turnover of the assets and the proceeds from the sale of the snowblower attachment.  (Underlying Order at 25, 26, 38.)

This Court also denied the amended claim of exemptions, finding that Hansel had acted in bad faith in her own inaction with regard to the exemptions, and in the alternative, that the estate's creditors had been prejudiced by the delay in amendment. (Underlying Order at 30 and 33.)  The Court found that the delay by Iannacone in moving to amend the schedules after the adversary proceeding was even more baffling than Frundt's delay to move for amendment.  (Id. at 32.)

In addition to revoking the discharge and denying the amended claim of exemptions, this Court ordered judgment against Hansel in the amount of $51,470.12, comprised of $41,635.53 for the remaining dissipated homestead equity, $8,034.59 for the proceeds from the 2001 and 2002 tax refunds, and $1,800 for proceeds from the sale of the snowblower attachment. (Underlying Order at 38.) The Court also ordered turnover of various items of personal property still held by Hansel. (Id.)

In this case, Hansel asserts claims against Frundt for legal malpractice, breach of contract, negligent misrepresentation, reckless misrepresentation, and breach of fiduciary duty. She claims the following damages:

- Loss of an exempt homestead with $100,000 value;

- Loss of revocation of discharge and consequent responsibility for $202,000 in debt;

- Judgment against Hansel in favor of the Trustee for $51,470.12;

- Direct and consequential money damages in the amount of $50,000; and

- Liability for legal fees in defending the actions of the Trustee in the amount of $22,000. (Complaint at ¶ 54.)

Hansel also claims that she suffered emotional distress due to Frundt's reckless misrepresentation. (Complaint at ¶ 70.)

## ARGUMENT

**I. ONLY THE PLAINTIFF HANSEL, AND NOT THE TRUSTEE, HAS ARTICULATED ANY CAUSE OF ACTION AGAINST DEFENDANTS.**

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Eighth Circuit has construed claims that accrue after the filing of the bankruptcy petition to be property of the debtor. In re Vote, 261 B.R. 439 (Bankr. App. 8th Cir. 2001). In Vote, the debtor became qualified to crop assistance payments through federal legislation that was enacted after the filing of his bankruptcy petition. Id. at 440. Even though the payments were related to crop failure that occurred prior to the filing of the bankruptcy petition, the court held that the debtor was entitled to keep the payments, because the right to receive payments did not exist at the time of the bankruptcy. Id. at 441. In so holding, the court specifically rejected the trustee's argument that Segal v. Rochelle, 382 U.S. 375 (1966), supported a different result, and the holding of Segal was of questionable applicability, as the holding and the legislative history of the post-Segal bankruptcy act indicated that Segal may be limited to tax refunds. Id. at 443. The Vote court held that because the debtor became entitled to the crop assistance payments after the filing of the petition, those payments could not be considered property of the estate under 11 U.S.C. § 541(a)(1).

Other courts have construed § 541(a)(1) to hold that malpractice claims that accrue after the filing of the petition are property of the debtor. In re de Hertogh, 412 B.R. 24 (Bankr. D. Conn. 2009) (where debtor's malpractice action against her former bankruptcy

attorney alleged that filing errors had resulted in disallowance of her homestead exemption, and therefore harm could not, as a matter of law, have occurred until the petition was filed, the action accrued post-petition, and was property of the debtors)[1]; In re Holstein, 321 B.R. 229 (Bankr. N.D. Ill. 2005) (cause of action against bankruptcy attorneys alleging pre-and post-petition malpractice was property of the debtor where no damage occurred, and therefore legal malpractice claim did not accrue, until after the petition was filed); Collins v. Federal Land Bank of Omaha, 421 N.W.2d 136 (Iowa 1988) (claim that attorney was negligent in advising to file chapter 7 bankruptcy rather than chapter 11 bankruptcy was property of the debtor because the debtor was not injured until injury occurred, which is after the petition was filed).[2] Simply put, the estate has no right to property that, as of commencement of the case, the debtor had no interest in. If the legal malpractice claims had not accrued "as of" commencement of the bankruptcy case, then they remain property of the debtor.

Plaintiffs claim that In re O'Dowd, 233 F.3d 197 (3d Cir. 2000), mandates a holding that all of the claims in the present action are property of the bankruptcy estate. O'Dowd is distinguished from the present case. In O'Dowd, attorney Sevack allegedly negligently represented O'Dowd in the purchase of an apartment building, which led to O'Dowd's filing for bankruptcy. Id. at 200. O'Dowd then hired attorney Trueger to represent her in the bankruptcy and to file a malpractice claim against Sevack, which

---

[1]     Connecticut's rule for accrual of legal malpractice actions is the same as Minnesota's:  that there is no accrual until the plaintiff sustains some injury or some harm.  Hertogh at 30; Antone v. Mirviss, 720 N.W.2d 331, 336 (Minn. 2006).

[2]     The rule in Iowa on accrual of a legal malpractice case is that the action accrues when the aggrieved party has a right to institute and maintain suit.  Collins at 139.

claim was property of the bankruptcy estate.  Id. at 201.  Trueger allegedly omitted

various claims that could have been asserted against Sevack.  Id.  A third and then fourth

attorney subsequently replaced Trueger.  Id.  O'Dowd then entered into an agreement

with the Trustee that she could pursue the Sevack claims and retain any proceeds in

excess of the first $10,000, which would go to the Trustee.  Id.  She later settled the

Sevack action.  Id.  O'Dowd then commenced an action against Trueger for negligence in

omitting claims against Sevack claiming she could have settled the Sevack claims for

more.  Id.  The Court of Appeals for the Third Circuit held that the claims of malpractice

against Trueger, even though they did not accrue until four years after filing, were

property of the bankruptcy estate under § 541(a)(7)[3] because the claims could be traced

directly to pre-petition conduct:

> The injury alleged in the [Trueger] Action is that O'Dowd suffered a
> diminished recovery in the Sevack Action as a result of her former
> attorneys' negligence. Put differently, the misconduct of O'Dowd's former
> bankruptcy attorney reduced the value of her malpractice lawsuit against
> Sevack.  While we acknowledge that the conduct giving rise to the
> malpractice claim occurred post-petition, we find it conceptually
> impossible to sever the [Trueger] Action from the underlying Sevack
> Action.  Moreover, even though O'Dowd did not retain [Trueger] until after
> she had filed her Chapter 11 petition, the malpractice claims are traceable
> directly to O'Dowd's pre-bankruptcy dealings with Sevack.

Id. at 203-04.

The logic of O'Dowd is that the debtor cannot claim the proceeds of a legal

malpractice claim where the underlying case in which the malpractice occurred accrued

prior to the bankruptcy filing, because that underlying case is property of the estate.

---

[3]     The bankruptcy estate includes "any interest in property that the estate acquires
after the commencement of the action."  11 U.S.C. § 541(a)(7).

Where the trustee is the one who suffered the original injury because the causes of action were not all alleged, it would be unfair to allow the debtor to prosecute the legal malpractice claim when she would not have had ownership of the underlying claim if there had not been legal malpractice. Here, there is no such link to argue that the post-petition claim is "sufficiently rooted" in the pre-bankruptcy past. In this case, Plaintiff alleges that Frundt's advice with regard to the bankruptcy is what caused damage. The damage from advice concerning the bankruptcy itself cannot be "sufficiently rooted" in the pre-bankruptcy past if no predicate fact to the claim occurred prior to the petition. Here, the negligence simply did not occur until the commencement of the case, and Plaintiff was not harmed until after filing of the petition.

The O'Dowd court conceded that where the debtor, and not the trustee, is injured by the malpractice, it is appropriate to hold that the claim belongs to the debtor. O'Dowd at 204.

Here, logic dictates that the malpractice claim is the property of the debtor. It is the debtor, and not the estate, who has been harmed by the alleged malpractice. Each of the elements of damage alleged in the Amended Complaint is damage to Hansel (loss of homestead exemption, loss of revocation of discharge, judgment in favor of the Trustee, and liability for legal fees in defending the action of the Trustee). If anything, the Trustee has benefited from the alleged malpractice because the discharge has been revoked and the estate is now entitled to the home, and also entitled to receive more money from Plaintiff Hansel to satisfy the claims of the creditors. The fact that the Trustee and Hansel have entered into a settlement agreement regarding distribution of the proceeds of

the legal malpractice claim does not make any part of the claim an original claim belonging to the estate. The assignment simply reflects Hansel's agreement to assign what is hers.

Thus, all of the claims asserted in the present action are claims of the debtor, and not the property of the bankruptcy estate.

## II. DEFENDANTS ARE ENTITLED TO DISMISSAL UNDER FED. R. CIV. P., RULE 12(b)(6) BECAUSE PLAINTIFF HANSEL IS *IN PARI DELICTO* WITH DEFENDANTS, AS BASED ON THIS COURT'S OCTOBER 20, 2007 RULING.

### A. Rule 12 Dismissal Standard.

Fed. R. Civ. P. 12(b)(6) allows a defendant to move the court for a dismissal of a complaint for various reasons, including failure to state a claim upon which relief can be granted. Although courts typically may not consider documents other than the complaint without converting a Rule 12 motion into one for summary judgment, an exception to this rule exists if the complaint refers to a document and the document is central to the claims alleged, see Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993); In re Hennepin County 1986 Recycling Bond Litigation, 540 N.W.2d 494, 497 (Minn. 1995), or if the court takes judicial notice of decisions in an underlying action, see Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). Therefore, in the present action, Defendants base the factual aspect of this motion on the allegations contained in Plaintiff's Amended Complaint, as well as a true and correct copy of the October 20, 2007 Memorandum Decision After Trial [ADV 05-3269] and Order on Trustee's Objection to Debtor's Amended Claim of Exemptions [BKY 02-93495], which is the

underlying court order. The Underlying Order's findings are referenced in Plaintiff Hansel's present Amended Complaint (see Amended Complaint at ¶ 38) and are central to her claims. Defendants request that this Court take judicial notice of the Underlying Order.

In deciding whether to dismiss a claim for failure to state a claim upon which relief may be granted, all well-pled factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. Katun Corp. v. Clarke, 484 F.3d 972, 975 (8th Cir. 2007). "A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief." Knieriem, 434 F.3d at 1060 (quoting Gilmore v. County of Douglas, Neb., 406 F.3d 935, 937 (8th Cir. 2005)).

**B.** **Plaintiff Hansel's Claim is Barred by the Doctrine of *in Pari Delicto*.**

The Amended Complaint states claims for legal malpractice, breach of contract, negligent misrepresentation, reckless misrepresentation and breach of fiduciary duty. Plaintiffs allege that Plaintiff Hansel suffered the following damages: (1) her homestead worth $100,000 was found not to be exempt in her bankruptcy; (2) her bankruptcy discharge was revoked; (3) judgment was entered against her in the amount of $51,470.12; and (4) she has liability for $22,400 in legal fees incurred defending against the actions of the Trustee.

The doctrine of *in pari delicto*, based on judicial reluctance to intervene in disputes between parties who are mutually involved in wrongdoing, holds that "anyone

who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity." Brubaker v. Hi-Banks Resort Corp., 415 N.W.2d 680, 683 (Minn. App. 1987) (quoting State v. AAMCO Automatic Transmissions, Inc., 293 Minn. 342, 347, 199 N.W.2d 444, 448 (1972) (quoting Kansas City Operating Corp. v. Durwood, 278 F.2d 354, 357 (8th Cir.1960))).

The case of Taunton v. Freeman, No. C4-02-737, 2002 WL 31867706 (Minn. App. Dec. 24, 2002) (unpublished) (attached as Exh. 3 to Thomas Aff.), has a very similar fact pattern to the present case. In Taunton, plaintiff Taunton had been represented by defendant attorneys in a dissolution. Id. at 1. A year after the divorce was final, Taunton's ex-wife moved to vacate the judgment because Taunton had lied about his finances. Id. After an evidentiary hearing on the issue, that court found that Taunton had intentionally engaged in misrepresentation and nondisclosure with respect to the marital assets during the divorce proceeding, which constituted fraud. Id. Taunton then settled the claim with his ex-wife and sued his divorce attorneys, claiming the increased divorce settlement and attorney's fees spent in defending his ex-wife's claims were a result of the divorce attorneys' negligence. The district court dismissed the claim on a Rule 12 motion based on the doctrine of *in pari delicto* because the prior court's order found that Taunton had "intentionally and fraudulently hid marital assets." Id. at 4. The court of appeals affirmed. Id.

A Wisconsin case with similar facts also provides guidance. In Evans v. Cameron, 360 N.W.2d 25 (Wis. 1985), the Wisconsin Supreme Court reinstated the district court's dismissal of a legal malpractice action for damages allegedly suffered by plaintiff Evans

15

as a result of her attorney's advice to her to lie under oath in her bankruptcy proceeding. Id. at 423-24. In Evans, plaintiff Evans alleged that the defendant bankruptcy attorney had advised her to lie at the meeting of the creditors and say that she had given $10,000 in cash to her mother, when in fact she had not given the $10,000 away. Id. at 424. She alleged damages arising out of the resulting perjury investigation and the dismissal of her bankruptcy petition. The district court granted the defendant's motion to dismiss for failure to state a claim, holding that the parties stood *in pari delicto*. Id. at 425. The court of appeals reversed, and the supreme court reinstated the district court's ruling. Id. The court held that Evans' act of lying under oath in the bankruptcy proceeding was immoral and illegal, which placed Evans *in pari delicto* with the defendant attorney, and therefore required dismissal of her complaint. Id. at 427.

Such is the case in the present action. In the underlying adversary bankruptcy proceeding, this Court held that Plaintiff Hansel on several occasions throughout the proceeding knowingly violated her obligations as a petitioner in bankruptcy. (See Underlying Order, p. 7.) This Court specifically found that the advice of counsel defense "[did] not wash" as to the dissipation of the tax refunds and equity in the non-exempt home. (Id. at 10.) As to the tax refunds, this Court found that Plaintiff's reliance on Defendant Frundt's advice was "unreasonable and unfounded." (Id. at 13.) As to the equity in the non-exempt homestead, this Court found that the Plaintiff "knowingly and deliberately failed to apprise the Trustee of her contemplated liquidation of a substantial estate asset and her unauthorized use of proceeds that were legally subject to his administration." (Id. at 23.) As to the amended claim of exemptions, amendment was

denied because the Plaintiff "harbored bad faith in her action and inaction on the matter of exemptions and material prejudice to the estate." (Id. at 30.) Notwithstanding attorney Frundt's potentially negligent advice, this Court held that Plaintiff's violations merited revocation of her discharge and the forfeiture of her right to amend her claims of exemption. (Id. at 16, 23, 33.)

Since every category of damages alleged by Hansel arises out of either the revocation of discharge or the denial of her amended claim of exemptions, both of which were attributed to Hansel's fraud on the bankruptcy court, Hansel's entire claim is barred by the doctrine of *in pari delicto*. The homestead equity was lost by the denial of the amended claim of exemptions. The debt to creditors was incurred due to the revocation of discharge. Judgment of $51,470.12 was entered against Hansel due to her fraudulent dissipation of estate property and the denial of the amended claim of exemptions. Liability for legal fees to the Trustee was incurred due to Hansel's fraud on the court. Plaintiff's own fraud caused and contributed to the damages she seeks; therefore, the doctrine of *in pari delicto* operates as a complete bar to Plaintiff's claims, and her claims should be dismissed.

## II. IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO DISMISSAL BECAUSE THE SECOND EXPERT AFFIDAVIT DOES NOT MEET THE MINIMUM LEGAL STANDARD REQUIRED BY MINN. STAT. § 544.42.

Because Plaintiffs have not provided a legally sufficient Second Affidavit of Expert Review, their case must be dismissed with prejudice.

In order to comply with the expert affidavit review requirements set out in Minn. Stat. § 544.42, Plaintiffs must serve a Second Expert Affidavit within 180 days of service of the summons and complaint. Plaintiffs filed an expert affidavit on May 5, 2008 (Second Expert Affidavit, attached as Exh. 4 to Thomas Aff.), within the 180 days. However, the purported Second Expert Affidavit is not legally sufficient to meet the minimum standards set out by § 544.42 and relevant caselaw.

Pursuant to subd. 4(a) of the statute, the second affidavit:

> . . . must be signed by the party's attorney and state the identity of each person whom the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories stating the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the party's attorney and served upon the opponent within 180 days after commencement of the action against the defendant. . . .

Minn. Stat. § 544.42, subd. 4(a). The statute continues:

> Failure to comply with subdivision 4 results, upon motion, in mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case, provided that an initial motion to dismiss an action under this paragraph based upon claimed deficiencies of the affidavit or answers to interrogatories shall not be granted unless, after notice by the court, the nonmoving party is given 60 days to satisfy the disclosure requirements in subdivision 4. In providing its notice, the court shall issue specific findings as to the deficiencies of the affidavit or answers to interrogatories.

Id. at subd. 6(c).

The statute requires the court to give 60 days to the plaintiff to cure "claimed deficiencies" in the second affidavit. The present motion is <u>not</u> based upon "claimed deficiencies." As explained below, an affidavit that does not meet the minimum

requirements of subdivision 4 is deemed to be no affidavit at all, and does not trigger the

application of the 60-day grace period. Thus, this is a motion to dismiss based on the

failure to file a minimally acceptable Second Affidavit of Expert Review under § 544.42,

subd. 4.

The Minnesota Supreme Court recently articulated the standard an affidavit of

expert disclosure must meet in order to survive a motion to dismiss:

> The minimum standards for an affidavit of expert disclosure, sufficient to
> satisfy the 180-day requirement, must be that the affidavit provide some
> meaningful information, beyond conclusory statements, that (1) identifies
> each person the attorney expects to call as an expert; (2) describes the
> expert's opinion on the applicable standard of care, as recognized by the
> professional community; (3) explains the expert's opinion that the
> defendant departed from that standard; and (4) summarizes the expert's
> opinion that the defendant's departure was a direct cause of plaintiff's
> injuries.

Brown-Wilbert, Inc. v. Copeland Buhl & Co. P.L.L.P., 732 N.W.2d 209, 219 (Minn.

2007).

Plaintiffs' affidavit fails to meet this requirement because it contains no opinions

regarding causation. It speaks solely to standard of care and breach of the standard of

care. There is no information indicating how the Defendants' departure from the standard

of care was a direct cause of Plaintiffs' damages. This makes sense because this Court's

Underlying Order makes it clear that there is no causation, because Plaintiff Hansel

caused her own damages by perpetrating a fraud on this Court.

Brown-Wilbert was an accounting malpractice case, but application of § 544.42 is

the same as in a legal malpractice case. In Brown-Wilbert, the plaintiffs argued that their

responses to interrogatories were sufficient to satisfy the requirements of the expert

affidavit due 180 days after service of the complaint. They had provided the names of their experts in answers to interrogatories, and in response to an interrogatory asking for the subject matter, the substance of facts and opinions, and the ground for each opinion to which the experts would testify, the plaintiffs answered:

> Both experts have been recently retained. Mr. Tautges' firm, Tautges Redpath, Ltd., serves as the current Certified Public Accountant for Brown-Wilbert, Inc. Both experts are expected to testify as to the conclusions set forth in the Complaint, based upon the facts alleged in the Complaint. Plaintiffs will supplement this Answer as necessary. Discovery is continuing.

<u>Id.</u> at 214.

The court held that even though the incorporated complaint contained detailed facts and certain legal conclusions, the disclosure did not meet the minimum standards in that it did not identify or define any specific standard of care, did not state how the accountants had deviated from the standard, and did not allege how the deviation caused injury. <u>Brown-Wilbert</u> at 219. The affidavit must set out how the expert will use the facts to arrive at opinions of malpractice and causation. <u>Id.</u> (citing <u>Sorenson v. St. Paul Ramsey Med. Ctr.</u>, 457 N.W.2d 188 (Minn. 1990)). Merely incorporating or repeating the attorney's conclusory allegations about malpractice are not enough to meet the minimum standard. <u>Id.</u>

Since <u>Brown-Wilbert</u>, the Minnesota Court of Appeals has twice upheld dismissals of legal malpractice cases for failing to file minimally sufficient second affidavits. In <u>Bajwa v. Foster</u>, No. A06-1681, 2007 WL 2245801, *3 (Minn. App. Aug. 7, 2007) (unpublished) (attached as Exh. 5 to Thomas Aff.), the plaintiffs claimed

that their answers to interrogatories, which identified their expert and incorporated paragraphs of their complaint, were sufficient to satisfy the statute.  Id.  The court upheld the dismissal, finding facts similar to those in Brown-Wilbert.  Id.

In Banken v. Hoke, No. A08-0160, 2009 WL 366279 (Minn. App. Feb. 17, 2009) (unpublished) (attached as Exh. 6 to Thomas Aff.), plaintiffs provided the following disclosure:

> Plaintiffs state the facts of the case have been reviewed by Plaintiffs' counsel with Ferdinand Peters, Esq. of Ferdinand Peters Esq. Law Firm, an expert whose qualifications provide a reasonable expectation that his opinions will be admissible at trial.  Furthermore, based upon the documents drafted by Defendants, advice and guidance provided by Defendants, the Demand letter and Complaint in this matter, and the lawsuits commenced against Plaintiffs, it [is] the opinion of Ferdinand Peters, Esq., [that] the Defendants deviated from the applicable standard of care and by that action caused injury to Plaintiffs.  Ferdinand Peters, Esq., is expected to testify at trial with respect to the issues of negligence, malpractice, and causation.

Id. at *2.  The court upheld the dismissal, finding that the answer simply identified an expert and reiterated in conclusory terms the factual statements and legal conclusions made in the complaint.  Id. at *3.  Rather than statements of the expert's opinion, the disclosure contained "averments and legal conclusions expressed by lawyers interested in the outcome of the case and which may be of little value to a party preparing to depose or cross-examine a witness."  Id.

In this case, Plaintiffs' expert James Dailey discusses the standard of care in paragraph 6 of his affidavit.  (See Second Expert Affidavit at ¶ 6.)  He discusses his opinion of how Defendant Frundt breached the standard of care in paragraphs 7-12.  (Id.

at ¶¶ 7-12.)  Nowhere in the affidavit does he describe how Defendant Frundt's departure from the standard of care was a direct cause of Plaintiff Hansel's injuries.

Plaintiffs' expert has not opined as to causation, which he must do in order to meet the four-part <u>Brown-Wilbert</u> test.  Thus, he has failed to satisfy the standard set out in <u>Brown-Wilbert</u> for a minimally acceptable affidavit, and the Amended Complaint must be dismissed with prejudice.

### III.  <u>IN THE ALTERNATIVE, PLAINTIFFS' ATTORNEY IANNACONE MAY NOT CONTINUE TO REPRESENT PLAINTIFF BECAUSE HE IS A WITNESS AND BECAUSE HIS NEGLIGENCE IS AT ISSUE.</u>

Minnesota law allows a defendant to submit evidence of the plaintiff's attorney's fault to the jury.  <u>See</u> <u>Melrose Floor Co., Inc. v. Lechner</u>, 435 N.W.2d 90, 92 (Minn. App. 1999).  Attorney Iannacone's negligence is implicated by the Underlying Order in the bankruptcy case.  This Court found that attorney Iannacone delayed in filing the amended schedules and that attorney Iannacone violated Loc. R. Bankr. P. (D. Minn.) 9006-1(c) by filing Hansel's response to the Trustee's summary judgment motion just one day prior to the hearing.  (<u>See</u> Underlying Order at 5, 27-28.)  Although Defendants' position is that claims against both Frundt and Iannacone are barred due to Hansel's *in pari delicto* status, if the claims against Defendant Frundt are allowed, Defendants will call attorney Iannacone as a witness to inquire as to how his comparative fault contributed to Plaintiff Hansel's damages arising out of the adversary proceeding, and Defendants will request submission of his fault to the jury under <u>Melrose Floor</u>.

Minnesota courts have applied Minn. R. Prof. Cond., Rule 3.7 to determine whether to disqualify an attorney. <u>Humphrey on Behalf of State v. McLaren</u>, 402 N.W.2d 535, 541 (Minn. 1987). Rule 3.7 of the Minnesota Rules of Professional Conduct states in part:

> (a) a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Attorney Iannacone's testimony does not relate to an uncontested issue – unless he agrees that he has comparative fault. The testimony does not relate to the nature and value of legal services rendered in <u>this</u> case. As in any legal malpractice case, the underlying case is the one where Defendants want to inquire into the nature of the legal services. Disqualification of the lawyer will not work substantial hardship on the client. If anything, Plaintiff Hansel will benefit from retaining a new attorney whose interests do not conflict with Plaintiff Hansel's because the new attorney's contributory negligence to Hansel's damages would not be at issue.

To be disqualified, an attorney's testimony must be "necessary." <u>Humphrey</u>, 402 N.W.2d at 541. "If the lawyer's testimony is merely cumulative, or quite peripheral, or already contained in a document admissible as an exhibit, ordinarily the lawyer is not a necessary witness and need not recuse as trial counsel." <u>Id.</u>

If Plaintiffs are allowed to proceed against Frundt, Defendants will elicit evidence of Iannacone's comparative fault. The matter at issue here is who or what caused Hansel's claimed damages. Plaintiff Hansel claims that it was Frundt, but Iannacone's

contribution to that fault as successor counsel is clearly implicated in the Underlying Order. Thus, his negligence is at issue. Other than the Underlying Order, attorney Iannacone is the only source of evidence related to his fault in the underlying case. His testimony is necessary because he is the only one who can answer questions about why he handled the underlying case the way he did. The situation will cause a "collision between the differing credibility of witness and advocate that the rule addresses." In re Southern Kitchens, Inc. v Transamerica Investment Corp., 218 B.R. 471, 474 (D. Minn. 1998) (citing Smith v. City of Owatonna, 439 N.W.2d 36, 42 (Minn. App. 1989)).

## CONCLUSION

Defendants respectfully ask the Court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) due to Plaintiff Hansel's *in pari delicto* status. In the alternative, Defendants request that this case be dismissed under Minn. Stat. § 544.42. In the other alternative, Defendants respectfully request that attorney Iannacone be disqualified under Minn. R. Prof. Conduct 3.7.

Respectfully submitted,

BURKE & THOMAS, PLLP

Dated:  02/26/10          By   /e/ Richard J. Thomas
                              Richard J. Thomas (#137327)
                              Corinne Ivanca (#0386774)
                          3900 Northwoods Drive Suite 200
                          St. Paul, MN 55112
                          Telephone:  651-490-1808
                          Facsimile:  651-490-1872
                          thomas@burkeandthomas.com

**ATTORNEYS FOR DEFENDANTS**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

CHAPTER 7

BKY CASE NO.:  02-93495

In re:

Tamara M. Hansel,
fka Tamara M. Markey,

               Debtor.

ADV. NO.:  08-3177

Randall L. Seaver, Trustee and
Tamara M. Hansel,
fka Tamara M. Markey,

**<u>AFFIDAVIT OF</u>**
**<u>RICHARD J. THOMAS</u>**

               Plaintiffs,

   v.

David F. Frundt and
Frundt & Johnson, Ltd.,

               Defendants.

STATE OF MINNESOTA  )
                      ) ss.
COUNTY OF RAMSEY   )

    RICHARD J. THOMAS, being first duly sworn upon oath, deposes and states:

    1.    I am one of the attorneys representing the Defendants in the above-captioned adversary proceeding.

    2.    Attached hereto as Exhibit 1 is a true and correct copy of the Amended Complaint in this proceeding filed November 5, 2008.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the October 29, 2007 Memorandum Decision After Trial [ADV 05-3269], and Order on Trustee's Objection to Debtor's Amended Claim of Exemptions [BKY 02-93495].

4.     Attached hereto as Exhibit 3 is a true and correct copy of the unpublished decision of the Minnesota Court of Appeals in <u>Taunton v. Freeman</u>, No. C4-02-737, 2002 WL 31867706 (Minn. App. Dec. 24, 2002).

5.     Attached hereto as Exhibit 4 is a true and correct copy of the Second Expert Affidavit filed in the above-captioned case dated May 5, 2008.

6.     Attached hereto as Exhibit 5 is a true and correct copy of the unpublished decision of the Minnesota Court of Appeals in <u>Bajwa v. Foster</u>, No. A06-1681, 2007 WL 2245801, *3 (Minn. App. Aug. 7, 2007).

7.     Attached hereto as Exhibit 6 is a true and correct copy of the unpublished decision of the Minnesota Court of Appeals in <u>Banken v. Hoke</u>, No. A08-0160, 2009 WL 366279 (Minn. App. Feb. 17, 2009).

FURTHER AFFIANT SAITH NOT.


_____/e/Richard J. Thomas_____
RICHARD J. THOMAS


SUBSCRIBED AND SWORN TO Before me this 26th day of February, 2010.


_____/e/Denise I. Haugen_____
Denise I. Haugen, Notary Public
My Commission Expires:  January 31, 2015

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re: | CHAPTER 7 |
| Tamara M. Hansel,<br>fka Tamara M. Markey, | BKY CASE NO.:  02-93495 |
| Debtor. |  |
| Randall L. Seaver, Trustee and<br>Tamara M. Hansel,<br>fka Tamara M. Markey, | ADV. NO.:  08-3177 |
|  | **<u>ORDER</u>** |
| Plaintiffs, |  |
| v. |  |
| David F. Frundt and<br>Frundt & Johnson, Ltd., |  |
| Defendants. |  |

The above-referenced matter came on before the undersigned pursuant to the motions of Defendants David F. Frundt and Frundt & Johnson, Ltd.  Richard J. Thomas, Esq., appeared on behalf of Defendants and Michael Iannacone, Esq., appeared on behalf of Plaintiff.

Based on all of the files, records and proceedings herein:

IT IS HEREBY ORDERED:

1.     Defendants' motion to dismiss is GRANTED.  Plaintiff's claim is barred due to her *in pari delicto* status.


Dated: _____, 2010.                   _____
                                                 Hon. Gregory F. Kishel
                                                 U.S. Bankruptcy Court Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF MINNESOTA

In re:

Tamara M. Hansel,
fka Tamara M. Markey,

                    Debtor.

Randall L. Seaver, Trustee and
Tamara M. Hansel,

                    Plaintiffs,

        v.

David F. Frundt and
Frundt & Johnson, Ltd.,

                    Defendants.

CHAPTER 7

BKY CASE NO.:  02-93495

Adv. No.:  08-3177

<u>**UNSWORN CERTIFICATE
OF SERVICE**</u>

I hereby certify that on February 26, 2010, I caused the following documents:

>   *1.      Defendants David F. Frundt and Frundt & Johnson,
>   Ltd.'s Notice of Hearing and Motion to Dismiss Pursuant to
>   Fed. R. Civ. P. 12(b)(6), Motion to Dismiss under Minn.
>   Stat. § 544.42, and Motion for Disqualification under Minn.
>   R. Prof. Cond. 3.7;*

>   *2.      Defendants David F. Frundt and Frundt & Johnson,
>   Ltd.'s Memorandum of Law in Support of Motion to
>   Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Motion to
>   Dismiss under Minn. Stat. § 544.42, and Motion for
>   Disqualification under Minn. R. Prof. Cond. 3.7;*

**3.** ***Affidavit of Richard J. Thomas (with Exhibits 1-6);and***

**4.** ***Proposed Order.***

to be filed electronically with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Michael J. Iannacone, Esq.          mji@iannacone.com

Dated:   02/26/10          By /e/Richard J. Thomas
                                       Richard J. Thomas (#137327)